# Dunson *v.* Heun.

### *Bill to Quiet Title.*

#### (Decided May 16, 1912. 59 South. 54.)

1. *Deeds; Forgery; Burden of Proof.*—Where the suit was to quiet title and the respondent attempted to show title through a deed from a former owner and plaintiff filed an affidavit that the deed was a forgery to the best of his knowledge and belief, as provided by section 3374, Code 1907, the burden was placed on the respondent of proving the due execution of the deed.

2. *Same; Execution; Alteration.*—The evidence in this case examined and held to sustain a finding that a deed under which the respondent claimed title was falsely altered after its delivery, the grantee's name being erased and another substituted, and that the deed was therefore void.

APPEAL from Covington Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Paul Heun against P. L. Dunson to quiet title. Decree for complainant and respondent appeals. Affirmed.

CLIVE E. REID, for appellant. An altered deed contains a memorial of the conveyance, and may be intro-

duced to prove such conveyance, and the existence of title with or without explanation.—*Burgess v. Blake,* 128 Ala. 105; *Ala. S. L. Co. v. Thompson,* 104 Ala. 570. It is only where an alteration is made without the consent of the maker that it affects a deed.—*Hollis v. Harris,* 96 Ala. 289. Alterations do not affect a conveyance unless their effect is to enlarge the estate or premises conveyed.—*Webb v. Mullins,* 78 Ala. 111. Alterations made after delivery do not affect the conveyance.—*Gulf Red Cedar Co. v. O'Neal,* 131 Ala. 129; 2 Cyc. 156. Under the testimony and under these authorities, the deed was altered before delivery, and afterwards delivered and accepted, and hence, the alteration was a part of it when it became a conveyance.

PARKS & RANKIN, for appellee. No brief reached the Reporter.

SOMERVILLE, J.—Appellee filed the bill to quiet his title to a certain lot in the town of Floralla. Appellee, having proved his peaceable possession of the property, as well as the other material averments of the bill, was entitled to relief, unless appellant showed a better title in himself.—*Kendrick v. Colyar,* 143 Ala. 597, 42 South. 110. This appellant attempted to do by showing a deed to the lot executed to himself by the then owner, one J. E. Hughes, and wife, in October, 1897.

Conformably to the statute (Code 1907, § 3374), appellee filed his affidavit that to the best of his knowledge and belief this deed was a forgery, thereby devolving on appellant as its proponent the burden of proving its due execution.

Appellee claims title, through mesne conveyances, under a deed executed to his remote grantor by George

W. Dunson, the father of appellant, and offers evidence
to show that the deed now purporting to be from
Hughes to B. L. Dunson was in fact made to George W.
Dunson, and that the deed was falsely altered after its
delivery by the erasure of the latter's name, and the
substitution of B. L. Dunson's name in its stead. Ap-
pellant, on the other hand, offered evidence to show that,
though the original draft of the deed was to George W.
Dunson as grantee, the intention was to convey to B.
L. Dunson, and that the error was corrected by substi-
tuting the name of the latter with the knowledge and
by the authority of the grantor, Hughes, before the de-
livery of the deed. This was the only issue in the case,
and the chancellor, holding that the evidence was equal-
ly balanced, and that, therefore, appellant had not met
the burden of proof imposed upon him with respect to
the execution of the deed offered by him, rendered a
final decree in favor of appellee, granting the relief
prayed for.

We have narrowly scanned and weighed the evidence
on both sides of the issue, but deem it inexpedient to
discuss it at length, and accordingly present only in
sparing outline those of its features and tendencies
which seem to us persuasive of the conclusion we have
reached. The deed in question was executed in 1897.
In May 1899, G. W. Dunson and wife executed to ap-
pellee's remote grantor, H. R. Dugan, a warranty deed
conveying the lot in question, and covenanting that
they had a good right to sell and convey. In June,
1899, Dugan conveyed to one Straughn, in May, 1900,
Straughn conveyed to one McDuffee, and in April, 1903,
McDuffee conveyed to appellee. Not until three months
after appellee received his deed from McDuffee was the
Hughes-Dunson deed placed on record. These facts
are not without significance, nor is G. W. Dunson's ex-

planation of his deed to Dugan at all satisfactory. J. E. Hughes, the grantor, his son J. T. Hughes, and H. Jordan, the two attesting witnesses, and J. F. Gilmer, the magistrate, have no recollection of any change being made in the name of the grantee after the deed was executed and acknowledged, and no recollection of B. L. Dunson's name being mentioned as a party to the transaction. Although the recollection of these witnesses is not very positive, they are as much so as could be expected after the lapse of 11 years. So far as appears, they are all entirely disinterested and the composite effect of their testimony is to very strongly negative the claims of appellant in regard to the alleged change in the deed. It is not likely that the grantor and the magistrate, the alleged chief actors in effecting the alteration, would entirely forget that circumstance, and both are reasonably certain that it did not occur.

On the other hand, G. W. Dunson, J. W. Williams, and J. W. Qualls, testifying as eyewitnesses to the transaction, describe in detail how Gilmer came out of the store and handed the deed to Dunson, who examined it, and stated that it was all right, except the deed should be to his son, and that it should be changed; and how Gilmer went into the store and proceeded to make the change with his own hand in the presence of J. E. Hughes. We have examined the narratives of these witnesses with critical care, and are not favorably impressed with their trustworthiness. It is to be borne in mind that the transaction in question occurred about 11 years prior to the time this testimony was given. It is true that the memory is often tenacious of details, and especially of some particular detail, of a transaction of remote or ancient date. This is more likely to be the case if the witness was personally interested at

the time, or if some special related occurrence has serv-
ed to impress the details on his memory, or to keep
them alive.  But when, after 11 years have passed, the
witness, though interested in the transaction, under-
takes without the slightest hesitation to supply by pos-
itive affirmation a score of insignificant details, includ-
ing every act and statement of some half dozen partic-
ipants, his mnemonic achievement, while it may excite
the wonder or admiration of the credulous, arouses in
the judicial mind an instant suspicion of its sincerity
and its verity.  And when such a feat is performed by
witnesses who were but casual observers, without the
slightest interest in the transaction, and with no relat-
ed occurrence to impress their minds, even great cre-
dulity will be overtaxed.  Let any one select a similar
transaction in which he personally participated a de-
cade, or even few years, ago, and attempt to reproduce
its unimportant details in narrative form, or discon-
nectedly, and he will acknowledge the justice of our
criticism of this testimony.

The original deed is before us.  In four different
places "George W." has been erased and "B. L." insert-
ed in its place.  The three chief witnesses for appellant,
named above, testified positively that these alterations
were made by Gilmer.  The face of the instrument dis-
proves it.  The merest tyro in the study and comparison
of handwriting would know at a glance that these in-
sertions are not made by the pen of Gilmer, who wrote
the two certificates of acknowledgment.  The question
is not even debateable.  Inconsistently with the testi-
mony of these witnesses, appellant's counsel argues that
the grantor himself made the changes.  A comparison
of these letters with the grantor's writing in the descrip-
tive part of the deed clearly convinces us to the con-
trary.  It must be conceded that the issue is somewhat

clouded by the testimony of several of appellant's witnesses to the effect that on several occasions ante litem the grantor stated either that he had or believed from what others said that he had made the deed to B. L. Dunson. He explains this, however, by saying that previous to making these statements G. W. Dunson had informed him that such was the case, and that he was merely accepting that statement without much thought about it.

On a full view of the whole evidence, and a consideration of all the various aspects of the case, we cannot but agree with the conclusion of the chancellor that appellant, as respondent in the court below, has not met the burden of proof devolved on him by law, and that, by reason of that failure, the issue of fact presented to the court must be resolved in favor of the appellee.

The decree of the chancellor is therefore affirmed.

Affirmed. All the Justices concur.